**IN THE COURT OF APPEALS OF IOWA**

No. 25-0482
Filed June 18, 2025

**IN THE INTEREST OF R.M.,**
**Minor Child,**

**A.F., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Annette F. Martin, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Julie Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered without oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**BULLER, Judge.**

A mother appeals the termination of her parental rights to R.M., born in 2020. Finding the statutory elements were proven and termination is in the child's best interests, and declining to apply a permissive exception, we affirm.

The family became involved with the Iowa Department of Health and Human Services (HHS) in June 2023 when the father's paternity was established in a separate child-welfare case. The HHS worker observed signs of marijuana use in the home and grew concerned for R.M.'s welfare. In March 2024, the parents tested positive for tetrahydrocannabinol (THC), methamphetamine, and cocaine. The child was removed from parental custody and placed in the custody of HHS. And the child tested positive for methamphetamine, cocaine, and THC. HHS placed the child in the physical care of relatives, then moved to the adoptive family of a younger half-sibling.

The child has been diagnosed with autism and referred for early-childhood interventions. She is mostly non-verbal (though still developing and responding to therapy) and struggles with regulating her emotions at times. In the past, the mother struggled with getting the child to appointments, which resulted in a speech therapy provider refusing to see the child in the future.

According to the mother, at the beginning of the case she thought she was taking unprescribed Percocet (an opioid) given to her by the father, and she only found out it was methamphetamine after the drug test. After the first positive drug test, the mother engaged in substance-abuse treatment; she was not successful with her first program but was nearing completion of a separate program during the termination trial. She missed many of her required drug tests, and when she

did appear she usually tested positive for marijuana, which was consistent with her admitted use. She provided one negative test for THC in early November but tested positive for cocaine. She tested positive for THC again but then had several more negative tests.

The mother participated in a mental-health evaluation and started therapy and medication. But she did not take the medications as prescribed, instead taking them sporadically. Rather than be consistent with her prescriptions, she used marijuana to self-medicate. She obtained a marijuana card but continued to get marijuana unlawfully from family and friends instead of lawfully from a dispensary.

The mother's attendance at visitation was spotty for many months (failing to confirm visits and having transportation issues), but she attended most visits in the couple months after the termination petition was filed. The missed visits resulted in the child being "unconsolable." The mother made comments at times to relatives and the foster family about kidnapping the child.

HHS, the county attorney, and the child's guardian ad litem all recommended termination of parental rights. The juvenile court terminated the mother's rights under Iowa Code section 232.116(1)(h) (2024). The court cited the mother's inconsistency with visits, her mental-health treatment, and her substance-abuse treatment. More, the court found the mother was "not in a position to provide [the child] with the stability and safety she needs." The mother appeals, and we review de novo. *See In re W.M.,* 957 N.W.2d 305, 312 (Iowa 2021).

**Statutory Elements.** The mother's petition on appeal challenges termination under Iowa Code section 232.116(1)(g). But only the father's rights

were terminated under that paragraph—which requires the termination of parental rights to another child. The mother's rights were terminated under paragraph (h).

To the extent she makes an argument about paragraph (h), the mother urges the child can be returned to her custody after more time to "make the necessary adjustments to ensure R.M.'s safety in her care going forward." But the only specific change she articulated was planning to stop using marijuana—and she testified to having used it just the day before trial. *See* Iowa Code § 232.104(2)(b) (requiring an enumeration of "specific factors, conditions, or expected behavioral changes" to support an extension). The child could not have been returned to her custody at the time of trial, and the mother's actions did not provide a basis on which the court could grant an extension. *See id.* § 232.116(1)(h)(4); *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). We conclude the statutory ground for termination was established.

**Best Interests.** The mother also argues termination is not in the child's best interests. *See* Iowa Code § 232.116(2). Our best-interests analysis focuses on "the child's safety," "the long-term nurturing and growth of the child," and the child's "physical, mental, and emotional condition and needs." *Id.*

The mother clearly loves the child and was attempting to make good decisions for her. But the child needs stable, reliable care, and the mother has struggled to keep up with her own mental health, much less the child's medical and therapeutic needs. When medicine was prescribed for her mental health, the mother chose not to take it as prescribed and continued using non-prescription marijuana as recently as the day before trial. She failed to fully participate in services for several months and did not take the necessary steps to reunite with

the child. And although she had made progress leading up to the termination trial—such as splitting up with the father and removing many of the bad influences from her home—her lack of consistency in following through with mental-health and substance-abuse recommendations is concerning, particularly in light of the child's need for stability and for her parent to protect her from potential harm. The mother's references to kidnapping the child also do not signal she can be trusted with acting in the child's best interests. Considering all the circumstances of this case, termination is in the child's best interests.

**Bond.** Finally, to the extent the issue is raised independent of the best-interests analysis, the mother perhaps claims the court should have declined termination due to the parent–child bond. *See id.* § 232.116(3)(c). The mother bore the burden to prove by "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.*; *see In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (requiring parent resisting termination to establish exception).

We recognize the love and bond between mother and child, but that is not enough. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). If anything, the bond caused more harm to the child when the mother failed to be consistent in attending visits, leaving the child "unconsolable." And the child is bonded with the sibling she currently lives with and the foster family. The mother did not meet her burden to show the bond is so close the child would suffer as a result of the termination. For the reasons described above, we affirm the termination of the mother's parental rights.

**AFFIRMED.**